COOK INLET TRIBAL COUNCIL,

          Plaintiff,

v.

CHRISTOPHER MANDREGAN, JR.,
*et. al.*,

          Defendants.

No. 14-cv-1835 (EGS)

## <u>MEMORANDUM OPINION</u>

Pursuant to the Indian Self-Determination and Education
Assistance Act ("ISDEAA"), 25 U.S.C. §§ 5301, *et seq.*, Plaintiff
Cook Inlet Tribal Council ("CITC"), an Alaskan Native tribal
organization, challenges a decision of the Indian Health Service
("IHS"), a component of the United States Department of Health
and Human Services ("HHS"). On July 7, 2014, IHS declined CITC's
2014 proposed amendment to the funding agreement in its self-
determination contract with the federal government (the
"declination decision"). On November 7, 2018, this Court issued
a Memorandum Opinion and a separate Order ("Remand Order") that
granted in part CITC's motion for summary judgment, vacated the
declination decision, and remanded it to IHS for a determination
consistent with the Opinion without issuing a final judgment.
*Cook Inlet Tribal Council v. Mandregan*, 348 F. Supp. 3d 1, 2-3,
17 (D.D.C. 2018) ("*Cook I*").

The parties move for reconsideration of the remedy the Court ordered in *Cook I*. CITC also moves for attorneys' fees and costs. Upon careful consideration of the parties' submissions, the applicable law, the entire record, and for the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** CITC's cross-motion for reconsideration, **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for reconsideration, and **HOLDS IN ABEYANCE** CITC's motion for attorneys' fees and costs.

## I.    Background

The Court assumes the parties' familiarity with the factual background and procedural history, which are set forth in greater detail in the Court's prior Opinion. *See Cook I*, 348 F. Supp. 3d at 2-4. Before addressing the parties' arguments, the Court provides an abbreviated overview of the relevant statutory scheme and the Court's previous rulings.

The ISDEAA authorizes the Secretary of HHS or the Secretary of the United States Department of the Interior to enter into self-determination contracts with Indian tribes and tribal organizations. *See* 25 U.S.C. § 5321; *see also id.* § 5304(i), (j). Under those contracts, the tribes promise to provide federally-funded services, such as tribal educational, social, and health services, that otherwise would have been provided by the federal government. *Id.* § 5321(a). The ISDEAA directs the Secretary to enter into a self-determination contract with an

Indian tribe upon the request of the tribe under certain circumstances. *Id.*

The Secretary can pay an Indian tribe or a tribal organization from two sources of funding: (1) the "Secretarial" amount, *id.* § 5325(a)(1); and (2) the "contract support costs" amount, *id.* § 5325(a)(2), (3). The Secretarial amount is the amount that the Secretary would have spent if the agency itself operated the programs. *Cook I*, 348 F. Supp. 3d at 7. The Secretarial amount is committed to the agency's discretion. *See* 25 U.S.C. § 5325(a)(1). But the Secretary has limited discretion for the contract support costs funding. *See* § 5325(a)(2); *see also Ramah Navajo Sch. Bd., Inc. v. Babbitt*, 87 F.3d 1338, 1344 (D.C. Cir. 1996) ("Congress left the Secretary with as little discretion as feasible in the allocation of [contract support costs].").

Because "[i]t soon became apparent" that the Secretarial amount did not fully account for the total costs incurred by Indian tribes to provide the services under the self-determination contracts, *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 186 (2012), the ISDEAA "mandates that the Secretary shall pay the full amount of 'contract support costs' incurred by tribes in performing their contracts." *Id.* at 185; *see also* 25 U.S.C. § 5325(a)(2). The ISDEAA defines "contract support costs" as "an amount for the reasonable costs for activities

which must be carried on by a tribal organization as contractor to ensure compliance with the terms of the contract and prudent management[.]" *Cook I*, 348 F. Supp. 3d at 7 (quoting 25 U.S.C. § 5325(a)(2)).[1]

At issue in this case is whether the Secretary must pay a tribal organization's "facility support costs" exclusively from the Secretarial amount, or whether facility support costs can be paid from the "contract support costs" amount. *Cook I*, 348 F. Supp. 3d at 2. For tribal contractors, like CITC, the ISDEAA allows them to propose amendments to the funding agreements in self-determination contracts. *Id.* at 8 (citing 25 U.S.C. §

---

[1] Section 5325(a)(2) provides that "contract support costs" consist of costs that: "(A) normally are not carried on by the respective Secretary in his direct operation of the program; or (B) are provided by the Secretary in support of the contracted program from resources other than those under the contract." 25 U.S.C. § 5325(a)(2). Under Section 5325(a)(3)(A), the contract support costs "shall include the costs of reimbursing each tribal contractor for reasonable and allowable costs of" two categories: "(i) direct program expenses for the operation of the Federal program that is the subject of the contract," and "(ii) any additional administrative or other expense related to the overhead incurred by the tribal contractor in connection with the operation of the Federal program, function, service, or activity pursuant to the contract," provided that such funding does not duplicate the Secretarial amount. *Id.* § 5325(a)(3)(A); *see also Cherokee Nation of Oklahoma v. Leavitt*, 543 U.S. 631, 635 (2005) (listing examples of "contact support costs" that "include indirect administrative costs, such as special auditing or other financial management costs[;]" "direct costs, such as workers' compensation insurance[;]" and "certain startup costs").

5321(a)(2)). Through annual funding agreements incorporated into the contracts, the Secretary pays the tribe's costs to administer the programs when the tribe submits a proposal. *See* 25 U.S.C. § 5321(a)(2). "[T]he Secretary shall, within ninety days after receipt of the proposal, approve the proposal and award the contract unless the Secretary provides written notification to the applicant that contains a specific finding that clearly demonstrates" one of the five conditions set forth in Section 5321(a)(2). *Id.*; *see also id.* § 5321(a)(4). "[T]he Secretary may extend or otherwise alter the 90-day period . . . if before the expiration of such period, the Secretary obtains the voluntary and express written consent of the tribe or tribal organization to extend or otherwise alter such period." *Id.* § 5321(a)(2); *see also* 25 C.F.R. § 900.18 ("A proposal that is not declined within 90 days (or within any agreed extension . . . .) is deemed approved . . . .").[2]

Since 1992, CITC has contracted with IHS to operate

---

[2] "The ISDEAA is implemented by regulations promulgated by the Secretary, collected in 25 C.F.R. Part 900. Those regulations are automatically made part of all ISDEAA contracts." *Seneca Nation of Indians v. U.S. Dep't of Health & Human Servs.*, 945 F. Supp. 2d 135, 144 (D.D.C. 2013). Courts have found 25 C.F.R. § 900.18 to be applicable where, as here, a party challenges a declination decision. *See, e.g.*, *Navajo Nation v. U.S. Dep't of Interior*, 852 F.3d 1124, 1126, 1130 (D.C. Cir. 2017); *Seneca Nation*, 945 F. Supp. 2d at 144-145, 147, 149-50, 152. Therefore, the Court rejects Defendants' argument that 25 C.F.R. § 900.18 is inapplicable here. *See* Defs.' Opp'n, ECF No. 60 at 4 n.1.

substance abuse programs serving Alaskan Natives living in the Cook Inlet region—programs that would otherwise have been federal programs. *Cook I*, 348 F. Supp. 3d at 3-4. CITC operates these programs under the authority of a Board of Directors, which consists of representatives from eight federally-recognized Native American tribes. *Id.* at 4. CITC's first self-determination contract provided, among other costs, $11,838.50 for facility-related costs. *Id.* CITC has received that same amount for those costs in subsequent years. *Id.* By 2013, CITC's facility support costs grew to $479,040. *Id.* In April 2014, CITC proposed an amendment to the 2014 self-determination contract to add $479,040 in "direct contract support costs associated with facility support." *Id.*

In rejecting CITC's proposal in July 2014, *id.*, IHS based its declination decision on one of the five declination options permitted in the ISDEAA: "[T]he amount of funds proposed under the contract is in excess of the applicable funding level for the contract[.]" 25 U.S.C. § 5321(a)(2)(D). IHS interpreted the ISDEAA's funding provisions to mean that CITC already receives those costs through its annual "Secretarial" funding. *Cook I*, 348 F. Supp. 3d at 4; *see also* 25 U.S.C. § 5325(a)(3)(A) (contract support costs funding "shall not duplicate any funding" otherwise provided). In other words, IHS argued that CITC's request for $479,040 in facility support costs would

result in duplicative funding as both Secretarial funding and contract support costs, in violation of the ISDEAA. *Cook I*, 348 F. Supp. 3d at 4.

Shortly thereafter, litigation ensued. *Id.* CITC appealed IHS' declination decision to this Court, bringing suit against Christopher Mandregan, Jr., Alaska Area Director of IHS; Alex M. Azar II,[3] Secretary of HHS; and the United States of America (collectively, the "Defendants"). *Id.* at 2, 4. Thereafter, the parties filed cross-motions for summary judgment. *Id.* at 4.

In *Cook I*, the Court granted in part CITC's motion for summary judgment and vacated IHS' declination decision of CITC's 2014 proposal for additional "contract support costs" funding to account for the increased facility support costs because IHS improperly declined the proposal. *Id.* at 17. The Court found that IHS failed to meet its burden of demonstrating that CITC's proposal was in excess of the applicable funding level for the contract, *id.* at 14, and that the administrative record did not contain sufficient documentation for the Court to determine whether or not CITC's request duplicates any funding already provided by the agency, *id.* at 17. The Court held that Section 5325 of the ISDEAA, 25 U.S.C. § 5325, is ambiguous, *id.* at 8-12, and found that CITC's interpretation of IHS' guidance—suggesting

---

[3] Secretary Azar has been automatically substituted as a defendant in this case. *See* Fed. R. Civ. P. 25(d).

that facility support costs may be funded as "contract support costs"—is reasonable, *id.* at 12-13, 16. In fashioning a remedy, the Court remanded CITC's 2014 contract proposal to IHS for a determination consistent with the Court's Opinion regarding the amount of facility support costs that should be funded as contract support costs beginning with the 2014 contract to present. *Id.* at 17. The Court directed the Clerk of Court to close the case without prejudice, granting either party with the option to file a motion to re-open the case following further IHS proceedings. Remand Order, ECF No. 38 at 2.[4] The Court did not direct the Clerk to enter a final judgment. *See id.; see also Cook I*, 348 F. Supp. 3d at 17.

*Cook I* set in motion a flurry of activity, including: (1) cross-motions for reconsideration, *see, e.g.*, Defs.' Mot. for Recons., ECF No. 43; Pl.'s Cross-Mot. for Recons. ("Pl.'s Mot. for Recons."), ECF No. 52; (2) a motion for attorneys' fees, *see* Pl.'s Mot. for Att'ys' Fees & Costs, ECF No. 41; (3) a motion to stay agency proceedings, *see* Pl.'s Mot. to Stay, ECF No. 49; (4) a Bill of Costs, *see* Pl.'s Bill of Costs, ECF No. 40; and (5) an appeal to the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"), *see* Defs.'

---

[4] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

Notice of Appeal, ECF No. 47.[5]

The Court exercised its remedial discretion to stay its Remand Order, *see* Min. Order (Jan. 18. 2019) (citing *Friends of Earth, Inc. v. EPA*, 446 F.3d 140, 148 (D.C. Cir. 2006)). The Court retained jurisdiction over the case due to the pending cross-motions for reconsideration, *see* Min. Order (Jan. 18. 2019), and the D.C. Circuit held in abeyance the appeal pending the resolution of those motions, *see* Order, ECF No. 56 (D.C. Cir. Jan. 23, 2019). Finally, the Court granted the parties' proposed briefing schedule for the pending motions, Min. Order (Jan. 29, 2019).[6] Those motions are ripe and ready for the Court's adjudication.

## II. Legal Standard

Federal Rule of Civil Procedure 54(b) governs the parties' cross-motions for reconsideration because the Court has not

---

[5] On January 18, 2019, the Court granted CITC's motion for expedited consideration of its motion to stay agency proceedings in view of CITC's deadline for providing information to IHS. Min. Order (Jan. 18, 2019). The Court explained that Defendants' notice of appeal was premature and will ripen on the date this Court resolves the cross-motions for reconsideration. *See, e.g.*, *Nichols v. Bd. of Trustees of Asbestos Workers Local 24 Pension Plan*, 835 F. 2d 881, 888 (D.C. Cir. 1987); *Unitronics v. Gharb*, 318 Fed. Appx. 902, 904 (Fed. Cir. 2008) (per curiam). Finally, the Court stayed its Remand Order pending resolution of the cross-motions for reconsideration. Min. Order (Jan. 18, 2019).

[6] In the interest of judicial economy, the Court stayed the proceedings in a related action, *Cook Inlet Tribal Council, Inc. v. Mandregan*, Civil Action No. 18-632 (EGS), since that case involves a nearly identical issue as the one in the present action. Min. Order, Civil Action No. 18-632 (Apr. 9, 2019).

entered a final judgment. *Shapiro v. U.S. Dep't of Justice*, No. CV 13-555 (RDM), 2016 WL 3023980, at *2 (D.D.C. May 25, 2016) (applying Rule 54(b) to a motion for reconsideration "[b]ecause the Court ha[d] not entered final judgment").[7] Under Rule 54(b), "the Court [may] revisit any order that adjudicates 'fewer than all the claims or rights and liabilities of fewer than all the parties . . . at any time before' the entry of final judgment." *Id.* (quoting Fed. R. Civ. P. 54(b)). The standard for determining whether or not to grant a motion for reconsideration brought under Rule 54(b) is the "as justice requires" standard. *Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006). Under this flexible standard, the Court considers "whether the court patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling

---

[7] The parties move for reconsideration under Rule 54(b). *See* Defs.' Mot. for Recons., ECF No. 43 at 1, 3-4; *see also* Pls.' Mot. for Recons., ECF No. 52 at 8, 12-13. In the alternative, Defendants move for reconsideration under Federal Rule of Civil Procedure 59(e). Defs.' Mot. for Recons., ECF No. 43 at 2-3, 5. Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days *after the entry of the judgment*." Fed. R. Civ. P. 59(e) (emphasis added). CITC points out that Rule 59(e) does not apply because "a formal final judgment has yet to be entered in [this] case." Pls.' Mot. for Recons., ECF No. 52 at 13 n. 4. The Court agrees. *See Cobell v. Norton*, 224 F.R.D. 266, 271 (D.D.C. 2004) ("Rule 54(b) governs reconsideration of orders that do not constitute final judgments in a case."). Accordingly, the Court will apply Rule 54(b) to the cross-motions for reconsideration.

decisions or data, or whether a controlling or significant change in the law has occurred." *In Def. of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 70, 75 (D.D.C. 2008) (internal quotation marks omitted); *see also Montgomery v. IRS*, 356 F. Supp. 3d 74, 79 (D.D.C. 2019) ("[T]here must be some 'good reason' to reconsider an issue already litigated by the parties and decided by the court, such as new information, a misunderstanding, or a clear error.").

The moving party has the burden of demonstrating "that some harm, legal or at least tangible, would flow from a denial of reconsideration." *In Def. of Animals*, 543 F. Supp. 2d at 76 (quoting *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005)). "[E]ven if justice does not require reconsideration of an interlocutory ruling, a decision to reconsider is nonetheless within the court's discretion[.]" *Id.* (internal quotation marks omitted). However, this discretion is "limited by the law of the case doctrine and 'subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Id.* (quoting *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (citation omitted)).

## III. Analysis

In moving for reconsideration, Defendants seek clarification as to whether the Remand Order was a final

judgment, and request that the Court limit the Remand Order to the 2014 contract proposal on the ground that the 2014 contract proposal is the only one at issue in this case. Defs.' Mot. for Recons., ECF No. 43 at 4. CITC moves for reconsideration on three grounds: (1) "controlling decisions indicate an [Administrative Procedure Act ("APA")]-style remand is improper in ISDEAA litigation"; (2) CITC will suffer from "legal and tangible harm" as a result of the denial of reconsideration; and (3) the parties never "battle[d] over the question of [the appropriate] remedy" in their summary judgment briefing. Pl.'s Mot. for Recons., ECF No. 52 at 13 (internal quotation marks omitted). The Court considers each argument in turn, concluding that an award to CITC for the increased facility support costs is the appropriate remedy under 25 U.S.C. § 5331(a), and that the award must be limited to the 2014 contract proposal.[8]

---

[8] Neither party seeks reconsideration of the substance of *Cook I* in which the Court: (1) granted in part CITC's motion for summary judgment; (2) denied Defendants' cross-motion for summary judgment; (3) vacated IHS' declination decision of CITC's 2014 contract proposal; (4) held that Section 5325 of the ISDEAA is ambiguous; (5) found that CITC's interpretation of IHS' guidance—that facility support costs may be funded as "contract support costs"—is reasonable; and (6) rejected IHS' interpretation that all facility support costs must be funded in the Secretarial amount because the Court found that the agency's conclusion was not compelled by the statute and the regulations or the agency's own guidance. *See* Defs.' Mot. for Recons., ECF No. 43 at 1-7; *see also* Pl.'s Mot. for Recons., ECF No. 52 at 1-32. The Court stands by its initial conclusions as to those unchallenged portions in its prior Opinion. *See Cook I*, 348 F. Supp. 3d at 2-16.

## A. The Remand Order Was Not a Final Judgment

The parties agree that the Remand Order was not a final judgment. *See, e.g.*, Defs.' Mot. for Recons., ECF No. 43 at 5 ("Defendants believe this [R]emand [O]rder is not a final judgment."); Pl.'s Mot. for Recons., ECF No. 52 at 13 (requesting entry of a final judgment); Defs.' Opp'n, ECF No. 60 at 17. Nonetheless, Defendants seek clarification on that point. *E.g.*, Defs.' Mot. for Recons., ECF No. 43 at 4-6. Defendants explain that they make this request for two reasons: (1) to ensure that "the parties retain the ability to appeal the [O]rder after the proceedings on remand[;]" and (2) in the event that "the case is re-opened, and the Court later issues a final judgment." Defs.' Opp'n, ECF No. 60 at 17-18.

A party may seek appellate review "from *all final decisions* of the district courts . . . ." 28 U.S.C. § 1291 (emphasis added). "It is black letter law that a district court's remand order is not normally 'final' for purposes of appeal under 28 U.S.C. § 1291." *N.C. Fisheries Ass'n v. Gutierrez,* 550 F.3d 16, 19 (D.C. Cir. 2008) (citations omitted). "[A]n exception to this general rule, however, where the agency to which the case is remanded seeks to appeal and it would have no opportunity to appeal after the proceedings on remand." *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 330 (D.C. Cir. 1989). Applying these principles, the D.C. Circuit held that this Court's Order

granting summary judgment to a party and remanding the matter to the agency for further proceedings was "a non-final remand order[.]" *Sierra Club v. U.S. Dep't of Agric.*, 716 F.3d 653, 655 (D.C. Cir. 2013).

The same is true here. This Court granted in part CITC's motion for summary judgment, vacated IHS' declaration decision, and remanded CITC's 2014 contract proposal to IHS for a decision consistent with the prior Opinion. *Cook I*, 348 F. Supp. 3d at 16-17. The Court's Remand Order cannot be construed as "final" because the remand to IHS contemplated further proceedings due to insufficient information in the administrative record to support CITC's request for facility support costs. *See Pueblo of Sandia v. Babbitt*, 231 F.3d 878, 881 (D.C. Cir. 2000) (determining that district court's Remand Order "contemplate[d] more than the ministerial act of using a corrected survey").

Furthermore, Defendants fail to argue that they would not have had an opportunity to appeal the Court's decision after the completion of the agency proceedings on remand. *See* Defs.' Mot. for Recons., ECF No. 43 at 5-6. The Court therefore finds that its Remand Order is not a final one. *See, e.g.*, *Babbitt*, 231 F.3d at 881 (holding that "[b]ecause the district court's order [came] within the category of a remand for significant further proceedings," the D.C. Circuit was "without jurisdiction to review it because . . . remand orders as a category are not

final."); *cf. Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976) (orders granting partial summary judgment but leaving the "award[ ] of other relief . . . to be resolved have never been considered . . . 'final' within the meaning of 28 U.S.C. § 1291").[9] Accordingly, the Court **GRANTS IN PART** Defendants' motion for reconsideration, and the Court confirms that the Remand Order is not a final judgment. *See* Defs.' Mot. for Recons., ECF No. 43 at 5-6.

### B. The Court Vacates Its Remand Order

The question of the appropriate remedy in this ISDEAA case is a challenging one. In their cross-motions for summary judgment, the parties did not brief whether the proper remedy was injunctive relief, a referral to meet and confer over the requested amount of funding, or a remand to the agency. *See*

---

[9] When deciding whether Remand Orders were final appealable orders, the D.C. Circuit has analyzed the requirements under the collateral order doctrine. *See, e.g.*, *Sierra Club*, 716 F.3d at 657. "The requirements for collateral order appeal . . . [are] that an order [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Ashraf-Hassan v. Embassy of France, in the U.S.*, 610 F. App'x 3, 6 (D.C. Cir. 2015) (quoting *Will v. Hallock*, 546 U.S. 345, 349 (2006)). Neither party invokes the collateral order doctrine, nor do they show that the Remand Order was immediately appealable under that doctrine. *See generally* Defs.' Mot. for Recons., ECF No. 43; Pl.'s Mot. for Recons., ECF No. 52. The Court need not consider this issue because the parties did not raise it. *See Brodie v. Burwell*, No. CV 15-322 (JEB), 2016 WL 3248197, at *12 n.1 (D.D.C. June 13, 2016).

*generally* Pl.'s Mot. for Summ. J., ECF No. 13; Defs.' Cross-Mot.

for Summ. J., ECF No. 15. Without the benefit of briefing on the

appropriate relief, this Court in *Cook I* remanded CITC's 2014

contract proposal to IHS for a decision consistent with its

Memorandum Opinion because the Court found that there was

insufficient information in the administrative record to support

the specific amount CITC's sought in facility support costs.[10]

348 F. Supp. 3d at 17. In its cross-motion for reconsideration

of the Remand Order, CITC argues that immediate injunctive

relief, rather than a plenary remand to the agency, is the

appropriate remedy for IHS' "unlawful" declination decision.

Pl.'s Mot. for Recons., ECF No. 52 at 28. According to CITC, a

plenary remand is "at odds with controlling decisions, is

contrary to the statutory scheme, and prejudices CITC." *Id.* at

14. Mindful of the courts in this jurisdiction that have

---

[10] CITC requested that this Court direct Defendants to "issue an amendment to [CITC's] FY 2014 contract adding **$467,201.50** in direct contract support cost funds" in its Proposed Order accompanying its motion for summary judgment. Pl.'s Proposed Order Granting Mot. for Summ. J., ECF No 13-6 at 2 (emphasis added); *see also* Compl., ECF No. 1 at 8 ¶ 29 ("On April 11, 2014, CITC submitted to the agency a proposal to amend its FY 2014 funding agreement to include **$479,040** in direct contract support cost funding for the facility costs CITC was incurring to carry out the contracted programs." (emphasis added)). Defendants' cross-motion for summary judgment was not accompanied by a proposed order as required by Local Civil Rule 7.1(c). *See* LCvR 7.1(c) ("Each motion and opposition shall be accompanied by a proposed order."); *see generally* Defs.' Cross-Mot. for Summ. J., ECF No. 15.

encouraged parties to reach a joint resolution in ISDEAA cases, CITC is amenable to a negotiated resolution. *Id.* at 20.

Defendants seek reconsideration of the remedy in *Cook I* on different grounds. Defs.' Mot. for Recons., ECF No. 43 at 6; *see also* Defs.' Opp'n, ECF No. 60 at 1. Acknowledging the Court's finding that "the Secretary had not met her burden of 'clearly demonstrating' the basis for her [declination decision]," Defendants argue that any relief should be limited to the fiscal year 2014 contract, *id.*, and that "nothing in the ISDEAA compels the award of the amount proposed by [CITC] . . . in such a circumstance[,]" *Id.* at 3. Finally, Defendants contend that the remand was an appropriate remedy in this case, and the Court should not disturb its prior Opinion. *Id.* at 1.

After first explaining the Court's authority to grant appropriate relief under the ISDEAA and then discussing the basis for reconsideration, the Court will address each of the parties' arguments in turn.

### 1. Courts Have Broad Discretion to Fashion an Appropriate Remedy in Equity under the ISDEAA

In Defendants' view, "[t]he decision to remand was well within the Court's 'broad discretion to fashion an appropriate remedy in equity'" under the ISDEAA. Defs.' Opp, ECF No. 60 at 2 (quoting *Pyramid Lake Paiute Tribe v. Burwell*, 70 F. Supp. 3d 534, 545 (D.D.C. 2014)). According to CITC, "Congress did confer

upon the district courts some measure of latitude to craft

'appropriate relief' based on the nature of the ISDEAA

dispute[.]" Pl.'s Mot. for Recons., ECF No. 52 at 26.

Section 5331(a) expressly provides:

> [T]he district courts *may* order *appropriate relief* including money damages, injunctive relief against any action by an officer of the United States or any agency thereof contrary to this chapter or regulations promulgated thereunder, or mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a duty provided under this chapter or regulations promulgated hereunder (including immediate injunctive relief to reverse a declination finding under section 5321(a)(2) of this title or to compel the Secretary to award and fund an approved self-determination contract).

25 U.S.C. § 5331(a) (emphasis added). "Statutory construction

must begin with the language employed by Congress and the

assumption that the ordinary meaning of that language accurately

expresses the legislative purpose." *Navajo Nation v. U.S. Dep't*

*of Interior*, 852 F.3d 1124, 1128 (D.C. Cir. 2017) (quoting

*Engine Mfrs. Ass'n. v. South Coast Air Quality Mgmt. Dist.*, 541

U.S. 246, 252 (2004) (internal quotation marks omitted)).

The D.C. Circuit has recognized that the word "'may' is

permissive rather than obligatory." *Baptist Mem'l Hosp. v.*

*Sebelius*, 603 F.3d 57, 63 (D.C. Cir. 2010); *Bennett v. Panama*

*Canal Co.*, 475 F.2d 1280, 1282 (D.C. Cir. 1973) ("Ordinarily

'may' is a permissive not a mandatory term."). As Defendants

correctly point out, *see* Defs.' Opp'n, ECF No. 60 at 4, Congress intended for the term "including" in Section 5331(a) to set forth a non-exhaustive list of examples of "appropriate relief," *id.* at 4-5; *see also United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1115 (D.C. Cir. 2009) (explaining that the term "including" is meant to be non-exhaustive).

Based on the usage of the word "including" in two separate places in the statute, Defendants read Section 5331(a) to provide district courts with a list of non-exhaustive examples of relief. Defs.' Opp'n, ECF No. 60 at 4. CITC takes issue with that interpretation. Pl.'s Reply, ECF No. 62 at 5-6. CITC argues that "[t]he common feature of all the remedies listed in sections 5331 is that they speak to final actions taken *by a court*," *id.* at 5 (emphasis in original), and "[n]one of those final district court remedies is consistent with the *non-*judicial course of sending a challenged declination matter back to the agency for a do-over[,]" *id.* at 6 (emphasis in original). CITC maintains that Section 5331(a) does not contemplate a remand as a remedy in an ISDEAA case. *Id.; see also* Pl.'s Mot. for Recons., ECF No. 52 at 26 (stating that "remand is not among the kinds of relief Congress enumerated"). CITC goes on to argue that "[o]nce IHS fails to [issue a declination decision] within the statutory timeframe, and once the Court has reversed a declination under section 5321(a)(2), the *only* permissible

remedies under section 5331(a) are to issue statutory 'injunctive relief,' including 'to compel the Secretary to award and fund an approved self-determination contract,' or issue a 'mandamus' order against the relevant officials." *Id.* at 25 (emphasis added) (quoting 25 U.S.C. § 5331(a)).

It is uncontested that Section 5331(a) gives district courts the authority to impose final actions. It is also undisputed that a "remand" is not one of the examples listed in Section 5331(a). That being said, nothing in Section 5331(a) limits the Court's authority to grant appropriate relief in the form of a remand in the ISDEAA context. *See* 25 U.S.C. § 5331(a). Indeed, courts in this jurisdiction have determined that a remand to an agency for further proceedings is a proper remedy under Section 5331(a) in certain circumstances. *See, e.g.*, *Seminole Tribe of Fla. v. Azar*, 376 F. Supp. 3d 100, 114 (D.D.C. 2019) (finding that remand was appropriate because "the parties should be afforded another opportunity to reach an agreement before time and resources are expended on further judicial proceedings"). CITC has failed to cite any binding authority within this Circuit—and the Court is aware of none—that prohibits a district court from remanding to an agency a declination decision. *See generally* Pl.'s Mot. for Recons., ECF No. 52. The Court therefore finds that CITC's interpretation of Section 5331(a) is untenable because the plain language of that

section gives this Court broad discretion to fashion an appropriate remedy, including, but not limited to, a remand to the agency for further proceedings.[11] *See* 25 U.S.C. § 5331(a).

## 2. Controlling Decision

The Court next considers the basis for reconsideration of *Cook I*. A party must provide the Court with a "meritorious basis upon which to grant it reconsideration." *Robinson v. District of Columbia*, 296 F. Supp. 3d 189, 193 (D.D.C. 2018). Defendants appear to rely on the Court's authority to modify *Cook I* in the interest of justice. *See* Defs.' Mot. for Recons., ECF No. 43 at 4 (stating the "as justice requires" standard). CITC argues that

---

[11] In *Cook I*, the Court remanded CITC's 2014 proposal to IHS, citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). *Cook I*, 348 F. Supp. 3d at 17. To support their position that the Remand Order was an improper remedy, CITC draws a distinction between *Florida Power* and *Cook I*, arguing that "[*Florida Power*] concerned routine agency remands in the context of the Hobbs Act and the APA, not the special judicial review proceedings governed by the ISDEAA." Pl.'s Mot. for Recons., ECF No. 52 at 22. CITC points out that this action is unlike an APA action because judicial review in ISDEAA cases is not limited to the administrative record. *Id.* CITC relies on *Fort McDermitt Paiute & Shoshone Tribe v. Price*, No. 17-837, 2018 WL 4637009, at *2 n.2 (D.D.C. Sept. 27, 2018), in which the court observed that it is a "misconception that [an ISDEAA] case involves an APA-style review limited to the administrative record. It does not." *Id.* at 22-23. CITC argues that *Florida Power* does not control the outcome of this case. *Id.* at 23. Defendants have conceded these arguments by not responding to them. *See Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 327 (D.D.C. 2018) (Sullivan, J.) ("Plaintiffs do not offer any response to this argument, and thus concede it."); *see also* Defs.' Opp'n, ECF No. 60 at 13 ("There are certainly distinctions between the APA and the ISDEAA[.]").

this Court erred in failing to consider "[c]ontrolling decisions from this Circuit and from this Court, as well as other federal courts[.]" Pl.'s Mot. for Recons., ECF No. 52 at 16.

"[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Cobell*, 355 F. Supp. 2d at 539 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). CITC contends that the D.C. Circuit, courts in this jurisdiction, and federal courts in other jurisdictions lend support to their argument that a remand is contrary to "controlling decisions" where a court reverses the agency's declination decision. Pl.'s Mot. for Recons., ECF No. 52 at 16-21 (collecting cases). This Court is bound by "controlling precedent—which in this [D]istrict, means D.C. Circuit and Supreme Court precedent." *Mesa Power Grp., LLC v. Gov't of Canada*, 255 F. Supp. 3d 175, 182 (D.D.C. 2017). CITC points to one controlling decision as the proper basis for reconsideration: *Navajo Nation v. United States Department of the Interior*, 852 F.3d 1124 (D.C. Cir. 2017). Pl.'s Mot. for Recons., ECF No. 52 at 17-18 ("*Navajo Nation*, decided well after the close of briefing here, is controlling decisional law on the remedial issue presented in this case.").

In *Navajo Nation*, a Native American tribe delivered to the

agency a proposal to its annual funding agreement during a partial government shutdown, requesting a budget increase from approximately $1.3 million to $17 million. 852 F.3d at 1126-27. The agency failed to approve or deny the proposal within the ninety-day window for the Secretary to act under the ISDEAA, but the agency issued a partial declination decision after the shutdown, authorizing about $1.3 million. *Id.* at 1127. As a result, the tribe brought an action to receive the full amount requested in the proposal. *Id.* at 1128. The D.C. Circuit rejected the government's arguments for equitable estoppel and equitable tolling for its untimeliness because: (1) the government's position has been that "estoppel does not apply against the sovereign United States[,]" especially since it "has charged itself with moral obligations of the highest responsibility and trust" to Native Americans, *id.* at 1129 (citation and internal quotation marks omitted); and (2) "[g]overnment stoppages are hardly unforeseeable" and not "extraordinary circumstances" warranting equitable tolling since the government could have receive proposals during the shutdown, *id.* at 1130.

The D.C. Circuit also rejected the government's argument that the tribe could not be awarded funds in excess of the "Secretarial amount." *Id.* The government argued that the agency could not "be required to award funding in excess of the amount

of funds the [agency] would otherwise have expended on the particular program or service for the tribe" because the ISDEAA "provides that the Secretary may decline a proposal if the amount of funding proposed 'is in excess of the applicable funding level for the contract[.]'" *Id.* (quoting 25 U.S.C. § 5321(a)(2)(D)). The D.C. Circuit explained:

> In short, [the Department of the Interior] seeks to transform the funding floor into a ceiling. This argument has been oft rejected. *See Yurok Tribe*, 785 F.3d at 1412 (noting that the statute, "by its clear terms, sets a floor, not a ceiling, on the amount of money that a Tribe can receive in a self-determination contract"); *Seneca Nation of Indians v. United States Dep't of Health & Human Servs*., 945 F. Supp. 2d 135, 150-51 (D.D.C. 2013) (noting that the . . . Secretarial amount is not immutable and can be increased by the Secretary). The cited portions of the ISDEAA do not "support the government's claim that self-determination contracts are limited to funding for programs the government currently provides to the requesting tribe." *Yurok Tribe*, 785 F.3d at 1412-13.

*Id.* In reversing the district court's decision denying the tribe's motion for summary judgment, the D.C. Circuit invalidated the agency's partial declination decision, thereby approving the tribe's proposal for approximately $17 million. *Id.*

Relying on *Navajo Nation*, CITC argues that "[t]he same outcome follows here" because "in the wake of an unlawful declination, the contract proposal must be awarded at the net

$467,201.50 level specified in CITC's 2014 proposal." Pl.'s Mot.
for Recons., ECF No. 52 at 17. CITC contends that this Court
should have awarded injunctive relief to CITC because: (1) this
Court reversed the declination decision; and (2) IHS failed to
"muster all of its arguments and develop a valid declination
decision" within the required ninety-day period.[12] *Id.* at 16
(citing 25 U.S.C. § 5321(a)(2)). CITC contends that "IHS doesn't
get a second chance to make a fresh declination decision, to
revise or add to a declination decision made four years earlier,
or to devise new reasons why the amounts should be declined (as
its December 13, 2018, letter now suggests)." *Id.*

Defendants respond that "as [CITC] notes, there are cases
in which courts have ordered the contract proposal to be awarded
as originally proposed by the contractor, but almost all of
those cases involved a nonexistent or untimely agency decision."
Defs.' Opp'n, ECF No. 60 at 8 (footnote omitted). According to
Defendants, *Navajo Nation* falls within the category of cases in
which courts awarded the contract amendments as proposed where

---

[12] Plaintiffs cite several out-of-Circuit decisions to support
the proposition that the Remand Order was impermissible because
IHS did not develop a valid declination decision within the
ninety-day timeframe. *See* Pl.'s Mot. for Recons., ECF No. 52 at
20-21. Defendants also rely on non-binding authority. Defs.'
Opp'n, ECF No. 60 at 7-8, 11-13. The Court need not consider the
out-of-Circuit decisions because those cases are not binding on
this Court. *Cf. Light v. Mills*, 697 F. Supp. 2d 118, 124 (D.D.C.
2010) (declining to consider the reasoning of a Sixth Circuit
opinion that was not binding on the court).

the agency's declination decisions were untimely. *See id.* at 8,
11. Defendants briefly summarize *Navajo Nation*, and they do not
challenge *Navajo Nation* as a controlling decision. *Id.* at 11.
Rather, Defendants attempt to distinguish a decision from a
member of this Court—holding that the proposed contract
amendments in that case became effective when the Secretary
failed to respond within the ninety-day window, *Seneca Nation*,
945 F. Supp. 2d at 152—from this case because "the *Seneca Nation*
court was not concerned that the proposed amount might exceed
what the ISDEAA allowed." *Id.* at 10. As to *Navajo Nation*,
Defendants state that the D.C. Circuit "following the reasoning
of *Seneca Nation*, awarded the contract as proposed." *Id.* at 11.
Defendants fail to respond to CITC's argument that the D.C.
Circuit in *Navajo Nation* "specifically rejected the agency's
argument—identical to the argument IHS advances here—that the
Court should instead order the contract approved at a lower
amount because some lower amount was all that the Tribe was
entitled to be paid under the ISDEAA." Pl.'s Mot. for Recons.,
ECF No. 52 at 17; *see generally* Defs.' Opp'n, ECF No. 60.
Accordingly, the Court finds that Defendants have conceded that
point. *See Campbell*, 311 F. Supp. 3d at 327.

Next, Defendants argue that "the burden of proof required
for the successful defense of a declination has nothing to do
with the appropriate remedy should a court determine that IHS

failed to meet that burden." Defs.' Opp'n, ECF No. 60 at 5.
Defendants do not deny that this Court in *Cook I* found that the
agency failed to meet its burden of demonstrating the "validity
of the grounds for declining the contract proposal[.]" *Id.*
(quoting 25 U.S.C. § 5321(e)(1)). CITC responds that "a remand
accomplishes a complete end-run around that burden, because
instead of having to defend its 2014 declination here and
suffering the consequences when IHS is unable to do so, the
agency gets to simply redo its declination from scratch . . . ."
Pl.'s Reply, ECF No. 62 at 6. Citing the ninety-day window in
Section 5321(a), CITC argues that the facts of this case show
that the Remand Order creates a "perverse outcome" that "upsets
the entire statutory scheme, which strictly limits the reasons
and timeframe in which the Secretary may lawfully decline a
contract proposal." *Id.*

　　The Court is persuaded by CITC's argument that the unique
facts and circumstances of this case demonstrate that the Remand
Order was inconsistent with *Navajo Nation*. *See* 852 F.3d at 1130.
Here, Defendants' position remains the same: "IHS has always
maintained that if any facilities support costs are provided
through the Secretarial amount, such costs cannot be recouped as
[contract support costs]." Defs.' Opp'n, ECF No. 60 at 16
(stating that "CSC funding 'shall not duplicate any funding [for
the Secretarial amount] provided under subsection (a)(1) of this

section'" (quoting 25 U.S.C. § 5325(a)(3)). Defendants'
argument—that a remand is appropriate in order to afford the
agency with additional time for "further factual development" to
prevent duplication, *id.*—is not consistent with the ISDEAA for
two primary reasons. First, the ISDEAA places the burden on the
agency, rather than the tribe or tribal organization, to develop
the record within the ninety-day window, *see* 25 U.S.C. §
5321(a)(2), and the agency bears the burden to "clearly
demonstrat[e] the validity of the grounds for declining the
contract proposal (or portion thereof)[,]" *id.* § 5321(e). IHS
failed to do so. Next, the statute permits the agency to seek an
extension of that window with the voluntary and express written
consent of the tribe or tribal organization. *Id.* § 5321(a)(2).
IHS sought no such extension.[13] CITC states, and this Court
agrees, that "Congress specifically assigned *to IHS*, and not to
CITC or to the Court, the role of making defensible 90-day
funding determinations when assessing contract proposals." Pl.'s

---

[13] The Court observes that Defendants' position—"the government
does not agree that a missed statutory deadline must necessarily
result in an award of the contract as proposed," Defs.' Opp'n,
ECF No. 60 at 10 n.8—is inconsistent with D.C. Circuit
precedent. *See Navajo Nation*, 852 F.3d at 1128-30. While this
Court acknowledges that "[n]othing in the Act requires the
Secretary to provide a windfall to a tribe[,]" *Pyramid Lake*, 70
F. Supp. 3d at 545, the tribe in *Navajo Nation* was awarded a
contract as proposed where the agency failed to respond to a
tribe's proposal within the ninety-day window. 852 F.3d at 1128-
30.

Mot. for Recons., ECF No. 52 at 23 (emphasis in original). IHS'
failure to do so must result in the approval of the proposal.
*See* 25 U.S.C. § 5321(a)(2); *cf. Cobell v. Norton,* 240 F.3d 1081,
1101 (D.C. Cir. 2001) (noting that statutes dealing with tribal
rights should be "construed liberally in favor of the [Native
Americans]").

The Court cannot ignore that denying reconsideration of the
Remand Order could harm CITC. *See In Def. of Animals*, 543 F.
Supp. 2d at 76. CITC argues that after the Court issued the
Remand Order, IHS improperly attempted to: (1) use the agency
proceedings on remand to "redo" its declination decision, Pl.'s
Mot. for Recons., ECF No. 52 at 9; and (2) "launch[] a fishing
expedition for information [IHS] believe[d] may help develop new
agency arguments" that CITC's proposal is "ineligible for
[contract support costs] funding," *id.* at 29. On November 30,
2018, an earthquake impacted CITC's outpatient services and
administrative building in Alaska, causing CITC's staff to
switch into "emergency response mode." *Id.* at 12 (stating that
the "earthquake made CITC's entire outpatient services and
administrative building uninhabitable"). A few days later, IHS
requested that CITC supply detailed explanations and
documentation for several categories of information, such as
CITC's general ledger, budget, lease and rental agreements. *Id.*
at 11 (describing the fourteen requests with subparts as "a

wide-ranging set of requests"); *see also* Letter from Christopher

Mandregan, Jr., IHS, to Gloria O'Neill, CITC (Dec. 13, 2018),

Pl.'s Ex. A, ECF No. 52-1 at 1-3. CITC argues that Mr. Mandregan

demanded the information even though he *knew* that CITC

transitioned into emergency response mode as a result of the

earthquake, and that he made the demands during the holiday

season. Pl.'s Mot. for Recons., ECF No. 52 at 12. Defendants do

not respond to these points. *See generally* Defs.' Opp'n, ECF No.

60; *see also Campbell*, 311 F. Supp. 3d at 327.

Rather, Defendants rely on *Maniilaq Association v. Burwell*,

170 F. Supp. 3d 243, 256 (D.D.C. 2016) ("*Maniilaq II*"), to

support IHS' document requests.[14] *See* Defs.' Opp'n, ECF No. 60 at

---

[14] In *Maniilaq Association v. Burwell*, 72 F. Supp. 3d 227, 240-
241 (D.D.C. 2014) ("*Maniilaq I*"), the court found that the
tribal organization's proposed lease of a clinic was included in
the organization's funding agreement by operation of law where
the Secretary did not respond within the statutorily-mandated
timeframe under 25 U.S.C. § 5387(b), and that remand was not
appropriate. The parties disagree as to whether *Maniilaq I* and
*Maniilaq II* are applicable here. CITC argues that the *Maniilaq*
cases stand for the proposition that the proper remedy for an
illegal declination is an award of the full contract proposal.
Pl.'s Mot. for Recons., ECF No. 52 at 18-19. Defendants argue
that the *Maniilaq* cases do not apply to this case because both
cases involve Title V of the ISDEAA, whereas this case involves
Title I. Defs.' Opp'n, ECF No. 60 at 10. Defendants contend that
*Maniilaq I* is distinguishable because the declination decision
in the present action was timely, *id.* at 10, and that the court
in *Maniilaq II* did not award the contract proposal because the
court adopted the parties' agreement, *id.* at 9. By not
responding, *see* Pl.'s Reply, ECF No. 62 at 13-14, CITC has
conceded these points. *See Campbell*, 311 F. Supp. 3d at 327.
Notwithstanding Defendants' attempts to distinguish the *Maniilaq*

9 n.6. In *Maniilaq II*, the court vacated a declination decision
of the tribal organization's lease proposal because the
Secretary failed to meet her burden to prove, by clear and
convincing evidence, the validity of the agency's grounds for
rejecting the proposal under 25 U.S.C. § 5387(d). 170 F. Supp.
3d at 255-56. In doing so, the court "stop[ped] short of
requiring the other specific relief that [the plaintiff]
request[ed]" and "compel[led] the parties to discuss, in a
manner consistent with [the] opinion, the proper amount of
compensation . . ., and how the amount of lease compensation
shall be determined in subsequent years." *Id.* at 256. In
accordance with the directives in *Maniilaq II*, the parties
submitted a joint status report, stating that they "*conferred*
and *came to agreement regarding the information and*
*documentation that should be exchanged to facilitate*
*negotiations*" and "[t]he [p]arties exchanged numerous documents
. . . ." Joint Status Report, *Maniilaq II*, Civil Action No. 15-
152 (JDB) (D.D.C. May 26, 2016), ECF No. 23 at 1 (emphasis
added). According to Defendants, "[f]ollowing the Court order in
*Maniilaq II*, IHS requested and received much of the same
documentation it has requested of [CITC] in this matter." Defs.'
Opp'n, ECF No. 60 at 9 n.6.

cases from this case, Defendants rely on *Maniilaq II* to support
their position. *See* Defs.' Opp'n, ECF No. 60 at 8-9, 9 n.6, 10.

The record does not support Defendants' position. Unlike the agreement among the parties in *Maniilaq II*, the letter from IHS to CITC does not indicate that the parties either conferred or agreed on the disclosure of the requested information. *See* Pl.'s Ex. A, ECF No. 52-1 at 1-3. It is undisputed that IHS "asked for additional information that could assist it in 'determin[ing] the amount [Plaintiff] is owed for facility support costs,'" Defs.' Opp'n, ECF No. 60 at 16-17 (quoting Pl.'s Ex. A, ECF No. 52-1 at 1). But CITC had no say in whether or not the agency's so-called "narrowly tailored request[s] for information" were amenable. *Id.* at 17. For these reasons, CITC has demonstrated *some* legal and tangible harm. *See In Def. of Animals*, 543 F. Supp. 2d at 76.

As this Memorandum Opinion makes clear, the question of the appropriate remedy in this ISDEAA case is difficult in light of the arguments presented in the cross-motions for reconsideration. Neither party disputes that this Court did not consider the arguments raised in the cross-motions for reconsideration regarding the appropriate remedy in this case because the parties did not raise them in their cross-motions for summary judgment. *See* Pl.'s Mot. for Recons., ECF No. 52 at 13; *see generally* Defs.' Opp'n, ECF No. 60. The failure of the parties to raise these arguments provides another basis for reconsideration. *See M.K. v. Tenet*, 196 F. Supp. 2d 8, 16

(D.D.C. 2001) ("[I]f the arguments addressed herein were originally raised (i.e., two years ago), it would have prevented the court from having to reconsider its . . . Memorandum Opinion and supplemental order."). In view of the positions advanced in the cross-motions for reconsideration, the Court exercises its discretion under 25 U.S.C. § 5331(a), grants injunctive and mandamus relief to CITC, and directs IHS to award CITC facility support costs. Accordingly, the Court **GRANTS IN PART** CITC's cross-motion for reconsideration, and **VACATES** the November 7, 2018 Remand Order.

### C. Award Amount

The remaining issue is whether CITC's requested amount of facility support costs is "reasonable and allowable" under 25 U.S.C. § 5325(a)(3)(A). The Court observed in its prior Opinion that it could not assure itself that the requested amount of $467,201.50 reflects the "reasonable and allowable costs" for facility support costs funding. *Cook I*, 348 F. Supp. 3d at 17 (citing 25 U.S.C. § 5325(a)(2), (3)); *see also* Compl., ECF No. 1 at 10 ("Relief Requested"). Nothing in the briefing on the question of the appropriate remedy has reassured the Court that the requested amount does not duplicate any funding already provided.

CITC argues that the record provides a "basis for concluding that the amount CITC requested was 'reasonable and

allowable' [because] CITC's 2014 contract proposal and supporting documentation, ECF No. 13-5, reflect that the amount CITC proposed came directly from CITC's 2013 independent audit, ECF No. 11-1 at 171 (showing $479,040 as the total facilities expenditures)."[15] Pl.'s Mot. for Recons., ECF No. 52 at 24. Defendants argue that CITC's requested amount is based on a 2013 independent audit, and "[i]t therefore makes more sense for [CITC] to rely upon its FY 2014 audited financial statement to demonstrate the costs it incurred for FY 2014." Defs.' Opp'n, ECF No. 60 at 15. Defendants point to CITC's "inconsistent information" for its requested amount, noting that the administrative record shows "facilities costs totaling $465,865" is "composed of a variety of costs such as telephone, equipment, and repair and maintenance, which are routinely identified separately from facilities expenses in Plaintiff's financial statements." *Id.* CITC characterizes Defendants' objections as "post-hoc justifications." Pl.'s Reply, ECF No. 62 at 12. CITC contends that the "$465,865" amount was not the final amount. *Id.* And "CITC was clear in its April 11, 2014 proposal that it was requesting **$479,040** in facilities costs (later subject to an offset)." *Id.* (emphasis in original) (citing Pl.'s Ex. C, ECF

---

[15] The Court takes judicial notice of the records in these proceedings. *Akers v. Watts*, 589 F. Supp. 2d 12, 15 (D.D.C. 2008) (Sullivan, J.).

No. 13-5 at 1). Further, CITC asserts that it "showed how [the $479,040 in facilities costs] came directly from CITC's [2013] audited financial statement." *Id.* (citing Pl.'s Ex. C, ECF No. 13-5 at 2); *see also* Admin. R., ECF No. 11-1 at 167 (showing "Facilities" expenses were $479,040 for the year ending in September 30, 2013).

Because CITC has not directly addressed Defendants' argument that the requested amount for the facility support costs should be based on the 2014 audited financial statement, *see id.*, the Court will take the same approach that was taken in *Pyramid Lake Paiute Tribe v. Burwell*. In that case, the court found that IHS did not provide a valid justification in its declination decision for the tribe's contract proposal as required by the ISDEAA. *Pyramid Lake*, 70 F. Supp. 3d at 537, 545. The court directed the parties to negotiate the appropriate amount for the contract because the record did not establish the amount that IHS would have otherwise provided for the program. *Id.* at 545. Here, "CITC is open to exploring a negotiated resolution, as the courts encouraged the parties to do in *Maniilaq II* and *Pyramid Lake*[.]" Pl.'s Mot. for Recons., ECF No. 52 at 20. The Court therefore directs the parties to negotiate the appropriate amount for the facility support costs, and submit to the Court a joint proposed order and final judgment.

The Court next considers Defendants' request to limit the

amount of facility supports costs to the 2014 proposal at issue in this case. Defs.' Mot. for Recons., ECF No. 43 at 6; Defs.' Opp'n, ECF No. 60 at 18. The Court remanded the 2014 contract proposal to IHS for a determination "regarding the amount of facility support costs that should be funded as [CSC], beginning with the 2014 contract *to present*." Remand Order, ECF No. 38 at 1-2 (emphasis added); *see also Cook I*, 348 F. Supp. 3d at 17 (ordering that "on remand, IHS must review CITC's proposal in a manner consistent with this Memorandum Opinion and determine the amount of facility support costs that should be funded as contract support costs beginning with the 2014 contract to date"). Defendants argue that the Court may only consider the 2014 contract because the Court lacks jurisdiction to consider any other years. Defs.' Opp'n, ECF No. 60 at 18. Defendants correctly point out that "[a]ny potential amount for subsequent years—and [fiscal years] 2015–2017 are at issue in separate cases—will be determined in those separate, related cases." *Id.*

CITC agrees that the 2014 proposal is the only proposal at issue in this case. Pl.'s Mot. for Recons., ECF No. 52 at 31. Nonetheless, CITC argues that the Court was correct to consider future years because the court in *Maniilaq II* ordered "the parties to discuss . . . the proper amount of compensation for [a] clinic lease . . ., and how the amount of lease compensation shall be determined in subsequent years." *Id.* at 32 (quoting

*Maniilaq II*, 170 F. Supp. 3d at 256). Unlike the court's order
in *Maniilaq II* that directed the parties to *discuss* the proper
amount, this Court in *Cook I* remanded the 2014 contract proposal
to IHS with specific directions to *determine* the amount of
facility support costs beginning with the 2014 contract to date.
*Compare Maniilaq II*, 170 F. Supp. 3d at 256, *with Cook I*, 348 F.
Supp. 3d at 17. CITC neither responds to Defendants' argument
that this Court lacks jurisdiction to consider contracts that
are not at issue in this case, nor challenges Defendants'
argument that the Court will determine any potential amounts for
subsequent years in separate, related cases. *See generally* Pl.'s
Reply, ECF No. 62. The Court therefore vacates the portion of
*Cook I* that remanded CITC's 2014 contract proposal to IHS for a
determination regarding the amount of facility support costs
that should be funded as contract support costs beginning with
the 2014 contract to date. Accordingly, the Court **GRANTS IN PART**
Defendants' motion for reconsideration.[16] *See* Defs.' Mot. for
Recons., ECF No. 43 at 6.

---

[16] The Court **DENIES** Defendants' motion for reconsideration with
respect to Defendants' request that this Court "[r]emand[] the
matter to [IHS] for a determination consistent with this
Memorandum Opinion regarding the amount of facility support
costs in Plaintiff's 2014 contract proposal that should be
funded as contract support costs." Defs.' Proposed Order, ECF
No. 43-1 at 1.

**D. CITC's Motion for Attorneys' Fees and Costs**

CITC moves for an award of attorneys' fees in the amount of $75,141.56 and costs in the amount of $3,590.92 under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. *See* Pl.'s Mot. for Att'ys Fees & Costs, ECF No. 41 at 1. Defendants oppose this motion. *See* Defs.' Opp'n, ECF No. 58 at 1-13.

Section 2412(d) provides that "[a] party seeking an award of fees and other expenses shall, within thirty days of *final judgment* in the action, submit to the court an application for fees and other expenses which shows": (1) "the party is a prevailing party"; (2) that the applicant "is eligible to receive fees under this subsection"; (3) the "itemized statement"; and (4) "that the position of the United States was not substantially justified." 28 U.S.C. § 2412(d)(1)(B) (emphasis added); *see also* LCvR 54.2 ("In any case in which a party may be entitled to an attorney's fee from another party, the Court may, *at the time of entry of final judgment*, enter an order directing the parties to confer and to attempt to reach agreement on fee issues." (emphasis added)).

Because the parties agree that the Court did not enter a final judgment, the Court retains jurisdiction in this case and exercises its discretion to hold in abeyance CITC's motion for attorneys' fees and costs. *See SecurityPoint Holdings, Inc. v. Transp. Sec. Admin.*, 836 F.3d 32, 38 (D.C. Cir. 2016) ("When a

court retains jurisdiction, the civil action remains ongoing, and any fee motion must await final judgment."). The Court also finds that holding in abeyance CITC's motion for attorneys' fees will conserve judicial resources pending the appeal. *See Forras v. Rauf*, 74 F. Supp. 3d 1, 3 (D.D.C. 2014) (finding that "it [was] in the interests of justice and judicial economy to hold the motion for attorney fees in abeyance" where a party appealed the court's ruling and the matter was pending before the D.C. Circuit). Accordingly, the Court **HOLDS IN ABEYANCE** CITC's motion for attorneys' fees and costs until further Order of this Court.

### E. CITC's Bill of Costs

CITC filed a Bill of Costs on November 20, 2018, seeking fees of the Clerk in the amount of $400. Pl.'s Bill of Costs, ECF No. 40 at 1. Defendants filed their opposition brief on December 4, 2018, *see* Defs.' Resp., ECF No. 42 at 1–3, and CITC filed its reply brief on December 10, 2018, *see* Pl.'s Reply, ECF No. 44 at 1–6. Local Civil Rule 54.1 permits a prevailing party to file a bill of costs after the entry of a final judgment. *See* LCvR 54.1(a) ("A bill of costs must be filed within 21 days after entry of judgment terminating the case as to the party seeking costs, unless the time is extended by the Court."); *see also* LCvR 54.1(c) ("The Clerk shall tax costs after the judgment has become final or at such earlier time as the parties may agree or the Court may order."). While the Local Civil Rules

"vest the Court with discretion to award costs before final judgment," *Cobell v. Norton*, 319 F. Supp. 2d 36, 41 (D.D.C. 2004), the Court will not exercise its discretion to do so. Because no final judgment has been entered in this case, the Court **DENIES WITHOUT PREJUDICE** CITC's Bill of Costs.

## IV. Conclusion

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** CITC's cross-motion for reconsideration, and **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for reconsideration. The Court **VACATES** the portion of the November 7, 2018 Memorandum Opinion and Order which remanded CITC's 2014 contract amendment proposal to IHS. The Court **HOLDS IN ABEYANCE** CITC's motion for attorneys' fees, and **DENIES WITHOUT PREJUDICE** CITC's Bill of Costs.

By no later than September 5, 2019, the parties shall jointly submit a proposed order and a proposed final judgment.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
             **United States District Judge**
             **August 14, 2019**